Filed 8/15/23  P. v. Kieta CA4/2

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E079138 |
| v. | (Super.Ct.No. RIF2105166) |
| KIONNE KIETA, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  John D. Molloy, Judge. Conditionally reversed and remanded with directions.

Michelle T. LiVecchi-Raufi, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, and Christopher P. Beesley and Britton B. Lacy, Deputy Attorneys General, for Plaintiff and Respondent.

Kionne Kieta was charged with felony robbery and misdemeanor destruction of property and admitted an enhancement for personal use of a deadly weapon. Kieta requested mental health diversion, and the trial court granted it for the misdemeanor but denied it as to the felony. Kieta subsequently pled guilty to the charges. On appeal, Kieta argues the court's decision to deny him mental health diversion for the felony robbery charge was an abuse of discretion. Due to newly enacted changes in the law, we conditionally reverse the conviction and remand to allow the trial court to reconsider Kieta's request for mental health diversion.

BACKGROUND

In November 2021 Kieta ordered a bicyclist to dismount while brandishing a pocketknife.[1] Kieta stabbed both tires of the bicycle and removed the cellphone attached to the handlebars. He started walking away, but then returned and took the bicyclist's jacket.

The Riverside County District Attorney charged Kieta with felony robbery (Pen. Code, § 211)[2] and misdemeanor destruction of property (§ 594, subd. (a)). They also alleged Kieta personally used a deadly or dangerous weapon in the commission of the robbery (§ 12022, subd. (b)(1)), that the robbery was a serious and violent felony

---

[1] Because Kieta's plea was the sole factual basis for his convictions, we have taken the facts regarding the underlying crime from Kieta's Prima Facie Showing of His Eligibility and Suitability for Mental Health Diversion.

[2] Unlabeled statutory citations refer to the Penal Code.

(§§ 1192.7, subd. (c), 667.5, subd. (c)), and that Kieta was on probation at the time of the offenses.

Superior Court Judge Gail A. O'Rane found Kieta was eligible for pretrial diversion for mental health reasons. Superior Court Judge Emma C. Smith then found Kieta unsuitable for mental health diversion for the felony offense, but suitable for the misdemeanor offense. The court explained that it was "frightened, not just for the public, but also for [Kieta] because had certain people been there with law enforcement or otherwise at the scene of this incident, and watched what transpired, [he] could really, really have been hurt." The court further stated, "this is a terrifying experience for all people involved . . . [b]ecause if someone didn't know [Kieta was] sick, right, [he] could easily have been taken down for this." It also expressed concern that just two months before this robbery Kieta was convicted of assault upon the person of another by any means of force likely to produce great bodily injury.

Kieta then pled guilty to both charges and admitted the enhancement. The court granted probation according to Kieta's plea agreement. Kieta timely appealed his judgment. In doing so he requested a certificate of probable cause, which the trial court granted.

## ANALYSIS

Kieta argues the trial court erred by refusing to grant mental health diversion because the two judges involved in assessing his request for mental health diversion made several contradictory findings. Specifically, Kieta argues it was error to determine

3

he was not a threat to the public for purposes of his eligibility for mental health diversion, but that he was a danger to the public for purposes of his suitability.  He also argues it was inconsistent to grant mental health diversion as to one charge, deny it as to the other, and ultimately grant probation.  We conclude that recent changes in the law compel remand to allow the trial court to reconsider Kieta's request in light of those changes.

"Section 1001.36 authorizes a pretrial diversion program for defendants with qualifying mental disorders."  (*People v. Frahs* (2020) 9 Cal.5th 618, 626.)  "[A] trial court may grant pretrial diversion if it finds all of the following:  (1) the defendant suffers from a qualifying mental disorder; (2) the disorder played a significant role in the commission of the charged offense; (3) the defendant's symptoms will respond to mental health treatment; (4) the defendant consents to diversion and waives his or her speedy trial right; (5) the defendant agrees to comply with treatment; and (6) the defendant will not pose an unreasonable risk of danger to public safety if treated in the community."  (*Id.* at pp. 626-627; § 1001.36 subds. (b)(1)-(2), (c)(1)-(4).)

Prior to January 1, 2023, all six of these criteria determined a defendant's *eligibility* for mental health diversion.  (§ 1001.36, former subd. (b); *People v. Whitmill* (2022) 86 Cal.App.5th 1138, 1149.)  While all six of these criteria are still required (with some modifications), as of January 1, 2023, the first two now determine a defendant's *eligibility* for mental health diversion, while the last four determine a defendant's *suitability*.  (§ 1001.36, subds. (b), (c).)

We requested supplemental briefing from the parties to determine whether this change in the law compelled remand. Both parties agree the change in the law is retroactive to Kieta, and we agree with the parties. (*People v. Williams* (2021) 63 Cal.App.5th 990, 995 [holding section 1101.36 "applies retroactively to all cases in which the judgment is not yet final"].) The only remaining question is whether this change could provide him any relief, including remand for reconsideration.

We conclude it does. Judge Smith decided Kieta was not suitable for diversion without reference to any of the criteria courts must now use to assess suitability. Moreover, Judge O'Rane had previously concluded Kieta met nearly identical criteria. Therefore, Kieta's eligibility and suitability were not assessed under the framework which should apply to him, and given Judge O'Rane's previous findings, it is reasonably probable he would have obtained a more favorable outcome had Judge Smith been required to use that framework.

This is further supported by the fact that Judge Smith found Kieta unsuitable for diversion in large part due to the danger she felt he posed to himself and others. Because the old version of the law did not provide any guidance for what constituted suitability, Judge Smith's decision on Kieta's dangerousness was not bounded. Under the new version, in order to be suitable for diversion a defendant must not "pose an unreasonable risk of danger to public safety, as defined in Section 1170.18." (§ 1001.36, subd. (c)(4).) Thus, under the new version of the law there is both a clear indication that dangerousness is a proper consideration under suitability and a fairly high bar for what constitutes an

5

unreasonable risk of danger. Under section 1170.18, an " 'unreasonable risk of danger to public safety' means an unreasonable risk that the petitioner will commit a new violent felony within the meaning of . . . Section 667[, subdivision (e)(2)(C)(iv)]." (§ 1170.18, subd. (c).) "The violent felonies encompassed in this definition 'are known as "super strikes" and include murder, attempted murder, solicitation to commit murder, assault with a machine gun on a police officer, possession of a weapon of mass destruction, and any serious or violent felony punishable by death or life imprisonment.' [Citation.] They also include sexually violent offenses and sexual offenses committed against minors under the age of 14." (*People v. Moine* (2021) 62 Cal.App.5th 440, 449-450.) "By requiring an assessment of whether the defendant 'will commit a new violent felony' within the meaning of section 667, subdivision (e)(2)(C)(iv), a trial court necessarily must find the defendant is 'likely to commit a super-strike offense.' [Citation.] Thus, the risk of danger is narrowly confined to the likelihood the defendant will commit a limited subset of violent felonies." (*Id*. at p. 450.) In short, there is a "high standard applicable to a finding of 'dangerousness' under sections 1001.36 and 1170.18." (*Id*. at p. 451.) Given this high bar, it is reasonably probable that Kieta would have received a more favorable outcome if Judge Smith had been expressly required to apply this much higher standard for dangerousness, as the court will be required to do on remand.

Finally, Kieta is correct that there is at least tension between Judge O'Rane's eligibility finding that Kieta was not an unreasonable risk of danger to the public, and Judge Smith's finding of unsuitability for felony diversion because he did pose a risk of

6

danger to the public. These findings would not be flatly in conflict if Judge Smith were properly using different criteria for the suitability determination than Judge O'Rane did for the eligibility one. Kieta has not argued that a contradiction requires an outright reversal, and, as we are remanding anyway, we do not address further whether the rulings of the two judges would be in conflict absent the change in the law. Under the current law, the factors that are applicable to eligibility and suitability are defined.

DISPOSITION

We conditionally reverse the judgment. We remand with directions to determine whether Kieta is eligible and suitable for mental health diversion. If the trial court determines that Kieta qualifies for diversion under section 1001.36, then the court may grant diversion. If Kieta successfully completes diversion, then the trial court shall dismiss the charges. However, if the court determines that Kieta is ineligible or unsuitable for diversion, otherwise declines to grant him diversion, or Kieta does not successfully complete diversion, then his convictions and sentence shall be reinstated.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAPHAEL _____
J.

We concur:

McKINSTER _____
Acting P. J.

MILLER _____
J.

7